IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE K.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL
SECURITY

    Defendant.

Case No. 6:22-cv-00163-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff brings this action for judicial review of the Commissioner of Social Security's decision denying Plaintiff's claim for disability insurance benefits and supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

After the Administrative Law Judge ("ALJ") determined Plaintiff was not disabled under the Social Security Act, Plaintiff submitted new evidence to the Appeals Council. Tr. 2.[2] The

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

new evidence consisted of nerve testing from Rehabilitation Medicine Associates in March of 2021, and evaluations from Slocum Orthopedics that occurred between November of 2020 and March of 2021. The Appeals Council considered the evidence and concluded the new evidence did not justify changing the ALJ's decision. Tr. 2.

The Appeals Council having considered the new evidence, the issue is properly before the district court. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Because there is a reasonable probability this new evidence would have changed the outcome of the decision, this action is remanded for further proceedings.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). In evaluating new evidence, "the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to

present the new evidence to the ALJ earlier." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). Evidence is material if it bears "directly and substantially on the matter in dispute." *Id.* (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). The plaintiff "must additionally demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes*, 276 F.3d at 462 (quoting *Booz v. Secretary of Health and Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1983)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can make an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**I.    The ALJ Emphasized No Diagnosis of Carpal Tunnel Syndrome.**

The ALJ appeared to place great emphasis on Plaintiff's lack of objective medical evidence diagnosing carpal tunnel syndrome. Plaintiff's medical record included several examinations assessing bilateral hand pain, carpal tunnel syndrome, and one nerve study diagnosing left and right ulnar neuropathy suggesting cubital tunnel syndrome. Tr. 539, 699, 717,

764, 766. 769, 771-72, 779-80, 782, 835, 847, 879, 883. However, several examinations in the record found that Plaintiff's symptoms were not consistent with cubital or carpal tunnel syndrome. Tr. 831, 835. The ALJ particularly questioned this during the hearing:

> ALJ: Mr. Moen-Johnson [Plaintiff's representative], we're talking about hand issues. What do you have in the record, other than the ulnar nerve findings, that talk about that, other than statements of the claimant? What objective evidence do you have? Because you understand, I have to have objective evidence to support everything.
>
> ATTY: Yes, Your Honor. Let me look real quickly.
>
> CLMT: Can I have – can I –
>
> ALJ: Wait. Wait. Wait. Let your representative respond to this. Okay?
>
> CLMT: Okay.
>
> ATTY: Yes. I have at 10F/1 kind of mentioned pains in his wrists and then some possible carpal tunnel in his left wrist as well, which is at 16 –
>
> ALJ: All right. I understand. But the EMG did not find carpal tunnel. It found ulnar nerve issues.
>
> ATTY: Okay. Okay. And then –
>
> ALJ: You understand what I'm saying?
>
> ATTY: Right, I do understand, Your Honor, yes.
>
> ALJ: So we're talking a whole lot about significant hand issues, but I don't have anything in the record, other than the EMG that talks about the ulnar nerve issues at Exhibit 10F. But I don't have anything that talks about carpal tunnel. The rei s something where the claimant states that he had carpal tunnel. And I think that was back in – I'll try to find that. But that is not supported by the objective evidence.
>
> ATTY: Okay. Yes, Your Honor. I had it in past medical history. So it looks like –
>
> ALJ: Yeah. Yeah. Because I'm looking at Exhibit 21F, where the primary care doctor, in August of '19, noted carpal tunnel with the left wrist, but there was no exam done, no objective findings. And I don't know that they did a Tinel's or Phalen's sign in there. And I didn't see that noted.
>
> ATTY: Yes, Your Honor, I am looking at 15F, and it looks like they did diagnose it. But I'm not seeing, actually, any medical testing. IT looks like that is missing, and that's what you're looking for here.

4 – OPINION AND ORDER

ALJ: Exactly. Correct.

Tr. 112-14.

The ALJ considered Plaintiff's hand issues in his RFC determination by limiting Plaintiff to handling and fingering bilaterally on a frequent basis. Tr. 65. However, the ALJ further opined in his written decision that Plaintiff had no objective medical findings suggesting carpal tunnel, stating, "He also experiences weakness in his hands; however, his EMG/NCS showed only mild to moderate ulnar neuropathy, not carpal tunnel syndrome." Tr. 71.

**II.     New Evidence Shows Carpal Tunnel Syndrome.**

Evidence presented to the Appeals Council after the hearing showed objective medical evidence of carpal tunnel syndrome. On August 14, 2020, Plaintiff presented to Dr. Jeffrey Tuman at Slocum Orthopedics with complaints of right shoulder pain and bilateral arm and hand weakness. Tr. 26, 29, 879, 882. Plaintiff claimed that "his hands are clumsy and he drops things a lot." Tr. 26, 879. Dr. Tuman planned to refer Plaintiff to Oregon Neurology for tests regarding Plaintiff's upper extremity weakness. Tr. 26, 879.

Plaintiff again visited Slocum Orthopedics on March 1, 2021, this time to Dr. Rudolf Hoellrich, concerning right shoulder pain and bilateral hand numbness. Tr. 18, 22. Dr. Hoellrich mentioned Plaintiff's prior appointment with Dr. Tuman and that Plaintiff "was lost to followup." Tr. 19. Dr. Hoellrich noted Plaintiff needed help removing his clothes for examination and reported "decreased light touch sensation in the ulnar nerve distribution with a positive Tinel's at the cubital tunnel bilaterally." Tr. 19. Dr. Hoellrich also concluded further nerve testing was reasonable concerning Plaintiff's bilateral hand numbness, which "seem[ed] to be progressing with time per his report." Tr. 18. Dr. Hoellrich also considered referring Plaintiff to a hand specialist for cubital tunnel release/ulnar nerve transposition. Tr. 18.

5 – OPINION AND ORDER

On March 24, 2021, Plaintiff saw Dr. Jedediah Robinson at Rehabilitation Medicine Associates concerning Dr. Hoellrich's referral for a nerve conduction study on his hands. Tr. 13. Objective findings from this study showed prolonged distal peak latency (Wrist) at the Left median (across palm) sensory nerve and prolonged distal peak latency (Median Palm) and abnormal peak latency difference (Median Palm-Ulnar Palm) at the Left median/ulnar (palm) nerve. Tr. 13. These findings concluded that Plaintiff's electrodiagnostic exam was abnormal, showing "[t]here IS electrodiagnostic evidence of LEFT median neuropathy across the wrist consistent with carpal tunnel syndrome" consistent with left-side mild carpal tunnel syndrome. Tr. 14. Findings also noted that carpal tunnel syndrome in the left hand did not explain all of Plaintiff's symptoms and recommended Plaintiff possibly consider surgical evaluation. Tr. 14.

### III.    New Evidence Potentially Affects ALJ's Decision.

During Plaintiff's hearing and again in the ALJ's written decision, the ALJ emphasized multiple times the lack of objective medical evidence that would suggest a diagnosis of carpal tunnel syndrome. Plaintiff's new evidence reveals objective medical findings of carpal tunnel syndrome and relate to symptoms during the time period at issue. This evidence could reasonably have impacted the ALJ's formulation of Plaintiff's RFC or the ultimate decision regarding whether Plaintiff was disabled.[3] This evidence also could have impacted the ALJ's view of much of the other evidence in the record, such as Plaintiff's therapist, Carley Cantwell, LCSW's descriptions of Plaintiff struggling to use his hands, or even Plaintiff's own credibility. Tr. 797, 827, 948, 958. For example, the evidence could have supported Plaintiff's testimony at

---

[3] Plaintiff also raises arguments against the ALJ's RFC and discrepancies between the ALJ's RFC instructions of "simple, routine, and repetitive tasks" and job reasoning levels. Pl. Br. at 18; Tr. 65; *see also Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (holding that an RFC of simple, routine, and repetitive tasks conflicts with jobs requiring Level 3 reasoning). However, I do not address these arguments here because new evidence may or may not change the ALJ's decision. If the ALJ's decision remains the same after reviewing the new evidence, which "reasonably support[s] either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 523 (quoting Reddick, 157 F.3d at 720-21).

the hearing that he (1) had problems gripping his cane, (2) struggled to write and handle writing utensils, (3) could not hold anything heavier than a coffee cup, (4) struggled to hold objects steady with two hands, and (5) could not pick up coins from a flat surface. Tr. 96, 106, 110-116. Alternatively, the ALJ could conclude the record as a whole, including new evidence pointing to mild carpal tunnel syndrome on the left side, continues to show that Plaintiff is not as limited as alleged and, correspondingly, that his RFC has not changed.

      I take no view on whether this new evidence mandates a finding of disability. I only note the new evidence could have impacted the ALJ's decision. Additionally, if the ALJ concludes the new evidence, in fact, points to Plaintiff being disabled, the disability date remains an outstanding issue.

## **CONCLUSION**

As the Appeals Council erred in concluding the new evidence had no reasonable probability of changing the outcome of the proceeding, pursuant to sentence four of 42 U.S.C § 405(g), this matter is remanded for the ALJ to review and weigh the new evidence and to determine if the new evidence impacts any of the ALJ's original findings and conclusions.

      IT IS SO ORDERED.

      DATED this 25th of May, 2023.

                                                /s/Michael J. McShane
                                                  Michael McShane
                                          United States District Judge